HUBERT LINK v. STATE.
Ex parte HUBERT LINK.

No. A-5171.   Opinion Filed June 14, 1924.
(226 Pac. 882.)

(Syllabus.)

1.   **Judgment and Sentence—Judgment to be in Pursuance of Verdict.**  In a criminal action the judgment of the court must be in pursuance of the verdict of the jury.

2. **Same—Judgment of Conjoint Robbery on Verdict of Larceny of Automobile Void.** In a prosecution for the larceny of an automobile the jury returned a verdict finding the defendant guilty as charged in the information. The judgment rendered on the verdict was that the defendant was guilty of the crime of conjoint robbery. Held, that the judgment and sentence so rendered is void.

3. **Larceny—Evidence not Sustaining Conviction of Larceny of Automobile.** The evidence in this case considered, and held insufficient to sustain the verdict of the jury.

Appeal from District Court, Delaware County; A. C. Brewster, Judge.

Hubert Link was convicted of stealing an automobile, and he appeals. Reversed.

E. H. Beauchamp, for plaintiff in error.

The Attorney General and N. W. Gore, Asst. Atty. Gen., for the State.

DOYLE, J. Plaintiff in error, Hubert Link, was tried in the district court of Delaware county upon an information charging him and one Fred Hays with unlawfully and feloniously stealing a Dodge roadster automobile, 1923 model, the personal property of O. F. Walker. He was found guilty by the jury, and his punishment fixed at imprisonment for a term of five years. To reverse the judgment rendered upon such conviction, November 24, 1923, he appealed by filing in this court on May 15, 1924, a petition in error with case-made.

The errors assigned relate to rulings of the court in the admission and exclusion of evidence and the sufficiency of the evidence taken as a whole to sustain the verdict. May 30th plaintiff in error filed in this court an application for a writ of habeas corpus, alleging that he is unlawfully imprisoned by the warden of the penitentiary under a commitment issued out of the district court of Delaware county, upon a judgment of conviction for the crime of conjoint robbery,

and alleging that he was never tried for conjoint robbery, but was tried under a charge of stealing an automobile and was convicted as shown by the case-made on his appeal, being case No. A-5171, now pending in the Criminal Court of Appeals.

The Attorney General has filed the following confession of error:

"After a careful examination of the record in case No. 5171, Link v. State, we find that the plaintiff in error was tried upon an information charging him with stealing an automobile, being minutely described by name and number both engine and serial, and by license tag number; that the verdict of the jury was of finding the defendant guilty as charged in the information, but that the court failed to sentence plaintiff in error upon the verdict rendered and rendered his judgment and sentence finding the plaintiff in error guilty of conjoint robbery and sentencing him to the penitentiary for a term of five years.

"There having been no judgment and sentence pronounced in accordance with the verdict of the jury there is nothing left for us to do except to ask this court to remand this case to the trial court with directions to enter a judgment and sentence in accordance with the terms and conditions of the verdict rendered."

The record shows that the judgment of conviction rendered on the verdict was for the crime of conjoint robbery, and for this reason, the sentence of the lower court must be set aside, and the judgment reversed.

A careful reading of the record convinces us that this defendant should also have a new trial.

The material and undisputed facts in this case as disclosed by the testimony are as follows:

That on the night of the 13th day of July, 1923, the automobile in question was stolen from Dr. C. F. Walker, at Grove, and some time thereafter was found by the sheriff at La Cross, Kan.; having been sold by the defendant, Fred Hays, to Milo Ryersee at McCracken, Kan. It appears that Hubert Link left Bartlesville on the 16th day of July, 1923, and rode in the stolen automobile with Fred Hays to McCracken, Kan. There Fred Hays disposed of the said automobile, executed a bill of sale for the same and received a Ford car in part payment; that the defendants then proceeded to Colorado, and from there to Corsicana, Tex., thence back to Bartlesville, where they were arrested September 22, 1923.

The state introduced in evidence a bill of sale transferring to the defendant Fred Hays a Ford touring car, dated July 20, 1923, signed Milo Ryersee, and also introduced a bill of sale to Milo Ryersee, reciting that for and in consideration of a Ford car and $250, Fred Hays sells one Dodge roadster to Milo Ryersee, signed by the defendant, Fred Hays, dated, July 20, 1923, with pencil notation on back that $215 is to be paid when additional bill of sale arrives from Bartlesville.

Also letter and envelope postmarked Kansas City, and Tulsa T. 210 August 16 1923. R. P. O., addressed to Mr. Bert Juvenall, McCracken, Kan. The letter is as follows:

Casper, Wyo., Aug. 3—23.

"Mr. Bert Juvenall—Dear Friend: I will write you a few lines. Bert I had hard luck. I never got to see Joe Smith to get that bill of sale. Will you see that boy I traded with and send the money to my wife. She needs it worse than I do. I am working in the oil field out here at Casper, but take out for your trouble.     From Fred Hays.
"Mrs. Fred Hays, 12 E. 4th St.,
    "Bartlesville, Okla."

The state also introduced a statement subscribed and sworn to by Hubert Link, September 22, 1923, in substance as follows: About the 15th or 16th of July Fred Hays was working in a barber shop at Bartlesville and cut my hair and shaved me; he told me that he bought a Dodge roadster from Joe Smith for $400; wanted me to go to Great Bend, Kan., with him; that was on Saturday, and we started Sunday morning. He traded the car at McCracken, Kan., to a fellow named Milo, or something like that, for a Ford and some money; I did not see him get the money; and we went from there to Denver and worked near there in harvest and then came down to Burbank and worked there; then went down to Corsicana, Tex., and worked putting up tanks; there Fred Hays received a letter from his wife saying that the law was looking for us, and we came back to Bartlesville in the Ford car; I went home and stayed all night, and the next morning they arrested me; my wife and three children were living in Bartlesville.

J. H. Hendricks testified:

"I am desk sergeant at the police station at Bartlesville; after the defendants were arrested I turned them over to the authorities of Jay, and after the preliminary hearing of this defendant in Delaware county, I turned the Ford car that had a Colorado license tag to Mr. Ryersee and Mr. Juvenall of McCracken, Kan."

He was then asked:

"Q. Do you know whether or not Fred Hays has been convicted any time pertaining to the Dr. Walker car?"

Over the defendant's objections he answered:

"Yes, sir; he was convicted here at Jay yesterday."

Dr. C. F. Walker testified:

"I had information that the sheriff of Rush county at La Cross, Kan., was holding a Dodge roadster that had Mr. L. F. Mayfield's license tag on it; Mr. Mayfield lived in the northern part of Grove. Roy Frazier, uncle of Hubert Link, lives about a quarter of a mile from Mr. Mayfield; I sent E. D. Hammond and Mack Long to get the car; when these men came home I had information that Fred Hays had sold my car at McCracken, Kan., and that there was another man with him, then I offered a reward for the arrest and conviction of Fred Hays."

Against the defendant's objections he further testified:

"I had information that this Ryersee car when it got to Bartlesville it had a Colorado license tag on it, and that this tag belonged to R. G. Swain, of Seibert, Colo.; I had information from R. G. Swain that his tag was stolen there late in July.

"The Court: This statement, gentlemen of the jury, of the witness, the last part of it is not competent; you should not consider it.

"Ryersee's car had a Kansas tag on it when it left McCracken; I saw Ryersee's receipt for his tag from the highway department of Kansas. I had a conversation with Hubert Link just before he made his statement; he looked at my car and said it was the car that he and Fred Hays went from Bartlesville to McCracken, Kan., in; I heard the statement of Fred Hays on the witness stand yesterday when he testified about when and where he picked up Hubert Link. He said he left Bartlesville about 10 or 11 o'clock Sunday morning and just saw Link on the street and asked him to go with him, and he said they drove to Pawhuska, and from there to Ponca City and stayed that night at Hutchinson, Kan."

E. D. Hammon testified:

"I am cashier of the First National Bank of Grove, and with Mr. Long went to McCracken, Kan.; we found Mr. Juvenall, and he told us that Mr. Hays had driven the Dodge

roadster to his house; we learned from other conversations with Mr. Juvenall and also from certain papers in the custody of the Bank of McCracken which were introduced here in the trial of Fred Hays yesterday that Hays had traded Dr. Walker's car to Mr. Ryersee, which papers are again offered in evidence.''

J. C. Ferree testified:

''I live one block from Dr. Walker; on the night his car was stolen I was in bed by the window and saw two men roll the car down the street to the crossing; then they got in and started off north with the car; I know Fred Hays and Hubert Link, but I had not seen Hubert Link lately in this county.''

L. F. Mayfield testified:

''I live half a mile north of Grove; I had two license tags which were found on Dr. Walker's car; my two boys and one or two other boys drive my car a great deal; when Dr. Walker's car was stolen, one of my sons was in Tulsa and the other was working on the 101 Ranch.''

Bill Freeman testified:

''I keep the toll bridge four miles west of Grove, on the Grand river; on the evening of July 13, 1923, a footman crossed the bridge; he had on a pair of automobile goggles and his cap pulled down over them, and he turned his head from me when he paid the toll; as he went on there was a car coming over the hill from the east, and he jumped over the fence and went into the corn field out of sight. I saw that man yesterday in the courtroom, and according to my best judgment the man was Fred Hays.''

The state rested, and the defendant demurred to the evidence on the ground that the same is insufficient to warrant a conviction, and asked the court to advise the jury to acquit the defendant. The demurrer was overruled and the request denied. Exception reserved. The defendant did not testify.

We think the court erred in admitting the testimony that codefendant Hays had been convicted the day before. It was also error to admit testimony as to what codefendent Hays testified to as a witness in his own trial.

The other testimony objected to was hearsay testimony, and, although a part of it was subsequently stricken out, there was error in admitting it. It had a tendency to injuriously affect the rights of the defendant. We think this incompetent testimony may have influenced the jury to the extent of depriving the defendant of a fair trial.

It is also urged that the evidence is insufficient to support the verdict. The above statement is a complete synopsis of the testimony which tended to incriminate this defendant, and, while some of it tends to justification of suspicion of his complicity, we do not think there was sufficient evidence to remove every reasonable doubt upon that point. There was no proof that this defendant had been in Delaware county about the time the car was stolen, and there was no evidence of facts and circumstances beyond the statement made by this defendant which was introduced in evidence. In effect the testimony of the state strongly corroborated the theory of the defense that he did not knowingly participate in the commission of the offense charged.

For the reasons stated we are of the opinion that the verdict was without the support of sufficient evidence to sustain it. The judgment is therefore reversed and a new trial granted.

The warden of the penitentiary will deliver the prisoner, Hubert Link, to the sheriff of Delaware county to be held in custody by him until discharged therefrom according to law.

MATSON, P. J., and BESSEY, J., concur.